[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The respondent, currently forty years of age, has been referred to the Superior Court for Juvenile Matters, charged as a delinquent for the alleged commission of the murder of Martha Moxley in 1975.
The statute in effect at the time of the murder, which controls the transfer assessment in this matter, provides:
 Transfer to superior court of child referred for commission of murder. The juvenile court shall have the authority to transfer to the jurisdiction of the superior court any child[1] referred to it for the commission of a murder, provided any such murder was committed after such child attained the age of fourteen years. No such transfer shall be valid unless prior thereto the court has caused a complete investigation to be made as provided in section 17-66 and has found, CT Page 1830-bh after a hearing, that there is reasonable cause to believe that (1) the child has committed the act for which he is charged and (2) there is no state institution designed for the care and treatment of children to which said court may commit such child which is suitable for his care or treatment or (3) the safety of the community requires that the child continue under restraint for a period extending beyond his majority and (4) the facilities of the superior court provide a more effective setting for disposition of the case and the institutions to which said court may sentence a defendant are more suitable for the care or treatment of such child. General Statutes (Rev. to 1975) § 17-60a.[2]
Two conditions precedent to any such transfer — the age of the respondent and reasonable cause — were addressed, by the state and the respondent, during a three-day evidentiary hearing in late June, 2000. In a written memorandum of decision issued on August 17, 2000, this court held that there was reasonable cause to believe that the respondent committed the murder of Martha Moxley in 1975 and that he was fifteen years of age on the date of said murder.
These two conditions precedent having been established, for the court's further consideration in assessing any such transfer request, § 17-60a directs the court to order "a complete investigation to be made as provided in [General Statutes (Rev. to 1975)] § 17-66."[3]
Generally, such an investigation is only ordered post adjudication,
i.e., after a finding of delinquency, and would include physical and/or mental evaluation(s), if appropriate to the full disposition of the case. Here, however, there has been neither acknowledgment of responsibility by the respondent nor adjudication of the respondent as a delinquent[4] for the murder of Martha Moxley. Accordingly, the transfer assessment in this matter is only dispositive of the issue of the forum, juvenile versus adult, in which the adjudicatory phase will occur.[5] Hence, this court is without authority to order that the respondent submit to any such physical and/or mental evaluation(s).[6]
Recognizing that the provisions of § 17-66 are not totally applicable to the instant matter, but in furtherance of, and in accordance with the mandatory language of General Statutes (Rev. 10 1975) § 17-60a, this court ordered an investigation by the probation office, albeit limited given the respondent's circumstances. The completed report was filed on September 27, 2000. Pursuant to the applicable rules of practice, upon request, the author of the report shall be present at the "dispositive" hearing and be subject to cross-examination on the contents of the report.[7]
CT Page 1830-bi
The state and respondent each had already presented some evidence with respect to the issues set forth in § 17-60a (2)-(4) in the course of the initial portion of the transfer hearing in late June 2000. However, pursuant to a request by respondent's counsel, the transfer hearing was reconvened on October 20, 2000, to address the contents of the probation investigation report. Joseph Paquin, the author of the report, was sworn as a witness and questioned by counsel for the respondent and the state. In accordance with the rules of practice, the respondent also had the right to produce witnesses on behalf of any dispositive plan he wished to offer.[8] Although no specific dispositive plan was presented, the respondent did produce additional witnesses at this hearing.
Central to this court's consideration of the probation investigation report and assessment of the remaining factors of § 17-60a, specifically sections (2)-(4), is a review of the dispositional authority of the Juvenile Court, as set forth in General Statutes (Rev. to 1975) § 17-68. Section § 17-68 provides:
 Commitment. Reports. (a) The court, if it finds that the child is delinquent and needs the care, discipline or protection of the state, may adjudge him delinquent and place him in the care of any institution or agency which is permitted by law to care for children, order the child to remain in his own home or in the custody of a relative or any other fit person subject to the supervision of the probation officer or withhold or suspend execution of any judgment. (b) If the court further finds that its probation services or other services available to the court are not adequate for such a child, the court shall commit such child to the department of children and youth services in accordance with the provisions of section 17-69. (c) Any child coming within the jurisdiction of the court, who is found to be mentally ill, may be committed by said court to a hospital or other institution empowered by law to treat mentally ill children: and, if the court adjudges a child to be delinquent and finds him to be mentally deficient, it may commit him to an institution for mentally deficient children or defective delinquents. Whenever a child adjudged by the court to be delinquent is fourteen years of age or older and is further found to be either mentally deficient or too educationally retarded to benefit from continued school attendance, the court may order him to be placed on vocational probation if such court finds that he may properly be employed for part or full time at some useful occupation and that such employment would be more favorable to his welfare than commitment to an institution and the probation officer shall supervise such employment. For the purposes of this section the limitations of subsection (a) of CT Page 1830-bj section 31-23 on the employment of minors under the age of sixteen years shall not apply for the duration of such vocational probation. (d) Whenever the juvenile court commits a child to the department of children and youth services or to any institution, public or private, there shall be delivered with the mittimus a copy of the results of the investigations made as required by section 17-66. The court may, at any time, require from the department, person, institution or agency in whose care a child has been placed such report as to such child and his treatment as it may direct.
Section 17-68 presents a range of dispositional alternatives for an adjudicated delinquent. Pursuant to the provisions of the transfer statute, § 17-60a, this court must, however, narrowly focus on the availability and suitability of state institutions "designed for the care and treatment of children" to which the Juvenile Court has authority to "commit such child."[9] Commitments are the most restrictive of the available dispositional alternatives in the juvenile system.[10]
Sections 17-68 (b) and (c) essentially provide the only two possible commitment options in a delinquency matter.
Upon commitment to the department of children and youth services (DCYS) under § l7-68(b),[11] said department then places the child in the appropriate state institution. Any such commitment of a delinquent child[12] to DCYS would be for an indeterminate time up to a maximum of two years, with the possibility of an extension of the commitment for an additional period of not more than two years.[13]
Consistent therewith, Judith Kallen, the Program Director of the Bridgeport office of the department of children and families, testified that the licensing regulations of the department prohibit placement of anyone over the age of eighteen, either on a custodial or non-custodial basis. The respondent's age forecloses a commitment by the Juvenile Court to the department.
The remaining commitment alternative under § 17-65 (c) provides for the commitment of a child directly to a hospital or other appropriate institution for an indefinite time,[14] if the child is found by the court to be mentally ill or a mentally deficient delinquent[15] who would require, for his protection or for the protection of others, special care, supervision and control.[16] The issue of mental illness was never raised at any time by the respondent. Nothing approaching the above specified level of mental deficiency was ever articulated or expressed. In fact, the witnesses presented by the respondent essentially testified to the contrary when they referenced the respondent's past diagnoses of, and treatment for, dyslexia and substance abuse. Moreover, CT Page 1830-bk they opined that the respondent was neither dangerous nor a threat to the community. Accordingly, based on the respondent's age in conjunction with the lack of evidence of mental illness and/or mental deficiency, neither commitment option is available or appropriate in this matter.
From the evidence presented, this court finds that there is no available or suitable state institution designed for the care and treatment of children to which the Juvenile Court could commit the, now forty year old, respondent that would be suitable for his care and treatment, should he be adjudicated delinquent for the murder of Martha Moxley. This court further finds that the facilities of the adult criminal division of the Superior Court afford and provide a more effective setting for the disposition of this case, and the institutions to which the adult criminal division of the Superior Court may sentence a defendant are more suitable for the care and treatment of this respondent, should he be found guilty of the murder of Martha Moxley.
Therefore, this matter is transferred to the adult criminal division of the Superior Court for the judicial district of Stamford-Norwalk at Stamford. Although, in 1975, this judicial district did not handle criminal matters, effective October 1, 1981, criminal jurisdiction was officially established in the judicial district of Stamford-Norwalk.[17]
This district is the most appropriate venue[18] at this time in that the murder of Martha Moxley was committed in the town of Greenwich, which falls within the judicial district of Stamford-Norwalk.
Lastly, this court takes no action with respect to the respondent's motion to dismiss, filed June 20, 2000, as it is based upon a challenge to a statute of limitations provided in General Statutes (Rev. to 1975) § 54-193, and is therefore premature. Section 54-193 was enacted as part of title 54 of the General Statutes, which governs criminal procedure.[19] The language of the statute, upon which the respondent relies, applies only to a criminal prosecution, which prosecution would begin with the filing of a charge in the adult division of the Superior Court. By contrast, a "child" charged as a delinquent is neither prosecuted nor stands trial for an offense until effectuation of a transfer to the regular docket of the adult criminal division of the Superior Court.[20]